UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

FTUTB, INC.,

          **Plaintiff,**

       v.                                             Case No. 20-CV-706

WISCONSIN SURGERY CENTER LLC, et al.,

          **Defendants.**

---

## DECISION AND ORDER

---

### 1. Background

According to the complaint, "FTUTB, Inc. is the administrative agent to the Secured Lenders of Advanced Pain Management Holdings, Inc. ('APM Holdings'), the parent company of a group of businesses engaged in providing administrative support to companies that provide pain treatment to 43,000 patients in Wisconsin and Minnesota." (ECF No. 1, ¶ 1.) "Vishal Lal is the former Chief Executive Officer of APM Holdings." (ECF No. 1, ¶ 2.) The secured lenders loaned APM Holdings more than $100 million. (ECF No. 1, ¶ 2.)

"Throughout Lal's term with APM Holdings, he also ran a side-business known as Wisconsin Surgery Center, LLC." (ECF No. 1, ¶ 2.) "Lal, however, was barred from

competing against, or soliciting doctors to help him compete against, entities affiliated with APM Holdings. He owed fiduciary duties of loyalty to APM Holdings' affiliates." (ECF No. 1, ¶ 2.) In reliance on Lal's representations "about protecting the Secured Lenders' collateral and ensuring the validity and extent of their liens," the secured lenders entered into loans with APM Holdings and chose not to exercise their post-default remedies against APM Holdings. (ECF No. 1, ¶ 4.) However, Lal and another doctor affiliated with APM Holdings, Thomas Stauss, were competing with APM Holdings. (ECF No. 1, ¶ 3.)

FTUTB filed a complaint against Lal, Stauss, and Wisconsin Surgery Center on May 8, 2020. (ECF No. 1.) It alleges that the court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332. (ECF No. 1, ¶ 7.) Specifically, it alleges that FTUTB is incorporated in Delaware with its principal place of business in New York. (*Id*.) Defendants Lal and Stauss are citizens of Wisconsin, and, upon information and belief, defendant Wisconsin Surgery Center's members are all citizens of Wisconsin. (*Id*.) The complaint asserts four state law claims: a fraud claim against Lal and Wisconsin Surgery Center, a claim for conversion against all three defendants, a claim for tortious interference with contract against all three defendants, and a claim that all three defendants conspired to commit fraud, conversion, and tortious interference with contract.

On June 9, 2020, Lal and Stauss moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1). (ECF No. 9.) On June 29, 2020, Wisconsin Surgery Center moved to dismiss the complaint pursuant to Federal Rules of Civil Procedure 9 and 12(b)(1) and (6). (ECF No. 15.) FTUTB responded (ECF No. 21), and the defendants replied (ECF Nos. 22, 23). The motions are ready for resolution. All parties have consented to have this court resolve this matter. (ECF No. 4, 6, 18.)

## 2. Applicable Law

District courts have jurisdiction over civil actions "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between…citizens of different States." 28 U.S.C. § 1332(a)(1). To establish diversity of citizenship, the citizenship of all of the plaintiffs must be completely diverse from the citizenship of all of the defendants. *Hart v. FedEx Ground Package Sys., Inc.*, 457 F.3d 675, 676 (7th Cir. 2007).

The defendants' motions implicate two rules between which there is a "rough symmetry"—"the 'real party in interest' standard of Rule 17(a) and the rule that diversity jurisdiction depends upon the citizenship of real parties to the controversy." *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 462 n. 9 (1980). "But the two rules serve different purposes and need not produce identical outcomes in all cases." *Id*. "In appropriate circumstances, for example, a labor union may file suit in its own name as a real party in interest under Rule 17(a). To establish diversity, however, the union must rely upon

the citizenship of each of its members." *Id.* (citing *Steelworkers v. Bouligny, Inc.*, 382 U.S. 145 (1965)).

"Early in its history, [the United States Supreme Court] established that the 'citizens' upon whose diversity a plaintiff grounds jurisdiction must be real and substantial parties to the controversy. Thus, a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy." *Navarro Sav.*, 446 U.S. at 460-61 (citing *McNutt v. Bland*, 2 How. 9, 15 (1844); *Marshall v. Baltimore & Ohio R. Co.*, 16 How. 314, 328-329 (1854); *Coal Co. v. Blatchford*, 11 Wall. 172, 177 (1871)). A party alleging that the court lacks subject matter jurisdiction because the citizenship of a non-diverse person must be considered may properly raise the issue by way of a motion to dismiss under Rule 12(b)(1).

Federal Rule of Civil Procedure 17(a) incorporates a similar requirement that "[a]n action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a)(1). "The 'real party in interest' is the person who possesses the right or interest to be enforced through litigation, and the purpose of this procedural rule is to protect the defendant against a subsequent action by the party actually entitled to recover." *RK Co. v. See*, 622 F.3d 846, 850 (7th Cir. 2010) (citing Fed. R. Civ. P. 17(a) advisory comm.'s note (2009); *Rawoof v. Texor Petroleum Co., Inc.*, 521 F.3d 750, 756 (7th Cir. 2008); 4 Moore's Federal Practice § 17.10 (3d. 2009)); *see also Checkers, Simon & Rosner v. Lurie Corp.*, 864 F.2d 1338, 1343 (7th Cir. 1988) ("The real party in interest is the one who 'by the

4
Case 2:20-cv-00706-WED   Filed 09/22/20   Page 4 of 15   Document 32

substantive law, possesses the right sought to be enforced, and not necessarily the person who will ultimately benefit from the recovery.'") (quoting *Illinois v. Life of Mid-America Insurance Co.*, 805 F.2d 763, 764 (7th Cir. 1986)).

"Rule 17 does not limit the subject-matter jurisdiction of federal courts." *Bargo v. Porter Cnty.*, 734 F. App'x 375, 377 (7th Cir. 2018) (citing *Knopick v. Jayco, Inc.*, 895 F.3d 525, 529 (7th Cir. 2018) (citing *Rawoof*, 521 F.3d at 756-57); *Norris v. Causey*, 869 F.3d 360, 366-67 (5th Cir. 2017)). Rather, it is a codification of the doctrine often referred to as prudential standing. *Rawoof*, 521 F.3d at 757. Thus, it "is a defense subject to waiver." *RK Co.*, 622 F.3d at 850. It is a flexible rule "for deciding when a case should not go forward." *Bargo*, 734 F. App'x at 377 (citing *United States v. Windsor*, 570 U.S. 744, 757 (2013); *Doermer v. Callen*, 847 F.3d 522, 526-27 n.1 (7th Cir. 2017); *RK Co.*, 622 F.3d at 851-52.

Some commentators are of the view that a failure to sue in the name of the real party in interest is properly raised in a motion under Rule 12(b)(6). *See Act II Jewelry, Ltd. Liab. Co. v. Wooten*, 301 F. Supp. 3d 905, 911 (N.D. Ill. 2018) (quoting 1 Federal Rules of Civil Procedure, Rules and Commentary Rule 17(a) ("The rules do not specify any particular mechanism for challenging real party status. However, a person who does not hold a legally enforceable right—and therefore is not a real party in interest—fails to state a claim upon which relief may be granted."). Or, because the Court of Appeals for the Seventh Circuit has identified it as an affirmative defense, a motion under Rule

12(b)(2) may be the proper way to raise the alleged defect. *See Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (noting that an affirmative defense may be properly raised in a motion for judgment on the pleadings). In any event, a violation of Rule 17 to sue in the name of the real party in interest is not properly raised by way of a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1).

But Rule 17 may implicate jurisdiction when, if the case were brought in the name of the real party in interest, the parties would cease to be diverse. *See, e.g., CCC Info. Servs. v. Am. Salvage Pool Ass'n*, 230 F.3d 342, 346 (7th Cir. 2000) ("the citizenship of the real party in interest is determinative when deciding whether the district court has diversity jurisdiction") (citing *Navarro Sav.*, 446 U.S. at 460-61; *Wilsey v. Eddingfield*, 780 F.2d 614, 615 (7th Cir. 1985)); *Illinois v. SDS W. Corp.*, 640 F. Supp. 2d 1047, 1049 (C.D. Ill. 2009); *Smelser v. Moss*, IP 00-1442-C-G/T, 2001 U.S. Dist. LEXIS 18165, at *5 (S.D. Ind. Aug. 29, 2001). "This is because a party who has no real interest in the outcome of the litigation should not be able to use its citizenship to transform a local controversy into a federal case." *CCC Info. Servs.*, 230 F.3d at 346.

"To determine who the real party in interest is, courts look to the 'essential nature and effect of the proceeding.'" *SDS W. Corp.*, 640 F. Supp. 2d at 1050 (quoting *Nuclear Eng'g Co. v. Scott*, 660 F.2d 241, 250 (7th Cir. 1981)). A plaintiff must have a "stake in the outcome" of the litigation to be a real party in interest. *Wilsey*, 780 F.2d at 616 (discussing *Betar v. DeHavilland Aircraft of Canada, Ltd.*, 603 F.2d 30, 32 (7th Cir.

1979)). Thus, the plaintiff must be more than a "mere conduit" for the claims of others. *Navarro Sav.*, 446 U.S. at 465; *CCC Info. Servs.*, 230 F.3d at 347.

Similarly, the plaintiff may not be "just a strawman," *Attorneys Tr. v. Videotape Comput. Prods.*, 93 F.3d 593, 597 (9th Cir. 1996), or a person whose interest was obtained through "sham or collusion," *Navarro Sav.*, 446 U.S. at 465; *see also* 28 U.S.C. § 1359. However, the fact that another entity would benefit does not mean that a plaintiff is not the real party in interest. *See, e.g.*, *Spectrum Origination LLC v. All. Consulting Grp., LLC*, No. 1:13CV371 LG-JMR, 2014 U.S. Dist. LEXIS 45351, at *5-7 (S.D. Miss. Apr. 2, 2014) (finding that an administrative agent for a group of lenders was the real party in interest despite the fact that the lenders stood to benefit from the litigation).

Facts relevant to the court's assessment of whether an entity is the real party in interest include whether the entity has the customary powers of a trustee, such as holding, managing, and disposing of assets for the benefit of others, s*ee Navarro Sav.*, 446 U.S. at 464; whether the entity is vested with legal title to the principals' property, s*ee id.*; *Mortg. Elec. Registration Sys. v. Estrella*, 390 F.3d 522, 525 (7th Cir. 2004); whether the entity's agreement with the principal includes the authority to sue on behalf of the principal, s*ee Navarro Sav.*, 446 U.S. at 464; and whether the entity is ultimately looking to protect its interests or the interests of another, *N. Tr. Co. v. Bunge Corp.*, 899 F.2d 591, 595 (7th Cir. 1990) ("In initiating this lawsuit Northern did not seek to protect any

interest of its own shareholders. Rather, Northern sought to fulfill its fiduciary duties as an agent for the sellers of the stock ….").

Wisconsin Surgery Center's motion raises a third issue, that of constitutional standing. (ECF No. 16 at 2 (discussing, *e.g.*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).) However, constitutional standing does not appear to be at issue here, and Wisconsin Surgery Center errs by conflating the prudential standing requirement of Rule 17 with the constitutional standing requirement of Article III. *See Rawoof*, 521 F.3d at 756.

3. Analysis

The court begins its analysis by assessing whether FTUTB is the real party in interest under Rule 17(a) to bring this suit. FTUTB argues that, as "an administrative agent of a syndicate of lenders," it is the real party in interest because it "is given the right to make demands and bring lawsuits on behalf of the lenders and is given control of the collateral posted for the loan …." (ECF No. 21 at 5 (citing *Chase Manhattan Bank v. Motorola, Inc.*, 136 F. Supp. 2d 265, 271 (S.D.N.Y. 2001); *KeyBank Nat. Ass'n v. Perkins Rowe Assocs., LLC*, No. 09 CV 497, 2009 WL 4042974, at *3 (M.D. La. Nov. 20, 2009)).) The only description it offers as to its rights and responsibilities as an "administrative agent" is when it alleges that that it "has first-priority security interests in all the collateral and is required to take all necessary steps to preserve and protect the

collateral during the period of the loan, which includes being the entity empowered to bring this litigation." (ECF No. 21 at 8; *see also* ECF No. 1, ¶ 25.)

The substantive portions of the complaint, however, never suggest any injury to FTUTB. Rather, the complaint consistently alleges that it was the secured lenders who were injured. For example, the complaint alleges:

> The Secured Lenders have an immediate possessory interest in and rights to the collateral staked by APM Holdings and the guarantors for the loan, and as the administrative agent for the loan, FTUTB can bring this action on behalf of the Secured Lenders. The Secured Lenders have direct causes of action here for fraud by Lal and Wisconsin Surgery, conversion of the collateral, and tortious interference. The Secured Lenders have suffered money damages to be determined at trial in an amount in excess of $50 million.

(ECF No. 1, ¶ 6.) Notably, FTUTB alleges that it is the secured lenders, not FTUTB, that "have an immediate possessory interest in and rights to the collateral," "have direct causes of action here for fraud by Lal and Wisconsin Surgery, conversion of the collateral, and tortious interference" and "have suffered money damages to be determined at trial in an amount in excess of $50 million."

As to each of the specific claims, the injured party is consistently identified in the complaint as the secured lenders. FTUTB is absent from the allegations:

**Count One – Fraud:**

- "Lal signed each amendment falsely representing to the *Secured Lenders* that… (ECF No. 1, ¶ 39 (emphasis added));

9

- "Thus, in signing each amendment, Lal fraudulently represented to the *Secured Lenders* that APM Holdings was taking all necessary steps to preserve collateral … for the *Secured Lenders*. (ECF No. 1, ¶ 39 (emphasis added));

- "To their detriment, the *Secured Lenders* believed that Lal's statements were true, and they relied on Lal's representations. As a result, the *Secured Lenders* continued to advance funds to APM Holdings, deferred receipt of cash interest payment from APM Holdings, and did not exercise more severe remedies to recoup its loan." (ECF No. 1, ¶ 41 (emphasis added)).

**Count Two – Conversion:**

- "APM Holdings is in default of the Credit Agreement, and as such, the *Secured Lenders* are entitled to exercise remedies to enforce possession of the collateral." (ECF No. 1, ¶ 45 (emphasis added));

- "Wisconsin Surgery, Lal, and Stauss transferred this collateral without the consent of APM Holdings or the *Secured Lenders*, which resulted in serious interference with the rights of the *Secured Lenders* as well as their abilities to possess that collateral." (ECF No. 1, ¶ 46 (emphasis added));

- "Wisconsin Surgery's, Lal's, and Stauss's conversion proximately caused injuries to *Secured Lenders* in an amount to be determined at trial in excess of $50 million." (ECF No. 1, ¶ 47 (emphasis added)).

**Count Three – Tortious Interference with Contract:**

- "The *Secured Lenders* have been in and remain in a Credit Agreement with APM Holdings." (ECF No. 1, ¶ 49 (emphasis added));

- "Wisconsin Surgery, Lal, and Stauss interfered with the contractual relationship between the *Secured Lenders* and APM Holdings." (ECF No. 1, ¶ 50 (emphasis added));

- "Wisconsin Surgery's, Lal's, and Stauss's tortious interference with contract proximately caused injuries to the *Secured Lenders* in an amount to be determined at trial in excess of $50 million." (ECF No. 1, ¶ 53 (emphasis added)).

**Count Four – Conspiracy**

- "Wisconsin Surgery's, Lal's, and Stauss's conspiracy proximately caused injuries to the *Secured Lenders* in an amount to be determined at trial in excess of $50 million." (ECF No. 1, ¶ 61 (emphasis added).)

It is only with respect to injunctive relief that FTUTB suggests a personal stake, and even then it is only in conjunction with the secured lenders. (ECF No. 1, ¶ 36 ("Accordingly, FTUTB and the Secured Lenders seek injunctive relief enjoining Defendants and all those acting in concert with them from converting the Secured Lenders' collateral.").)

The complaint alleges only that FTUTB acquired a first-priority security interest in the collateral and that it must take all necessary steps to preserve and protect the

collateral. An entity with such an interest may be able to pursue certain claims, such as a claim for the conversion of that collateral (and the associated conspiracy claims), but, again, the complaint alleges that only the secured lenders were injured by the alleged conversion. Any basis for FTUTB's other claims is less clear.

The allegations in the complaint are insufficient to support the inference that FTUTB has stepped into the shoes of the secured lenders, through assignment or otherwise, such that it may pursue all of the claims in the complaint. FTUTB's assertion that it is obliged to "to take all necessary steps to preserve and protect the collateral during the period of the loan" suggests, at best, that FTUTB is a mere agent for the secured lenders. Without more, that is not enough to make it the real party in interest. *Cf. Mortg. Elec. Registration Sys.*, 390 F.3d at 525 (discussing agency vis-à-vis diversity and holding that "it is the citizenship of the principal, and not that of the agent, that matters") (citing *Indiana Gas Co. v. Home Ins. Co.*, 141 F.3d 314, 318-19 (7th Cir. 1998); *Northern Trust Co.*, 899 F.2d 591). If an agent acquires title to the property, it may be regarded as a trustee and thus "is treated as a principal even though someone else enjoys the beneficial interest." *Mortg. Elec. Registration Sys.*, 390 F.3d at 525. But the complaint lacks allegations sufficient to support any such conclusion here.

In similar cases, the precise nature of the relationship between the lenders and the administrative agent was significant. *Cf. Keybank Nat'l Ass'n v. Perkins Rowe Assocs., LLC*, No. 09-497-JJB, 2009 U.S. Dist. LEXIS 108728, at *11 (M.D. La. Nov. 20, 2009)

12
Case 2:20-cv-00706-WED   Filed 09/22/20   Page 12 of 15   Document 32

(finding an agent for a group of lenders to be the real party in interest based, in part, on the terms of the loan agreement); *Chase*, 136 F. Supp. 2d at 267, 270-71 (finding that a "collateral agent and administrative agent on behalf of the consortium" of lenders was the real party in interest based on the court's review of the details of the agreement between the agent and lenders). But the complaint provides insufficient information to support a finding that FTUTB is the real party in interest to bring this lawsuit. Therefore, the court will grant the defendants' motions.

However, it is not appropriate yet to dismiss this action. The court cannot say that FTUTB is not the real party in interest; the court finds only that the record does not currently show that it is. Therefore, FTUTB must be given the opportunity to amend the complaint. *See* Fed. R. Civ. P. 17(a)(3). Additionally, it has not been shown that the court would, in fact, lack jurisdiction if the individual secured lenders were named as plaintiffs. The court has not been informed as to the identity of those entities, much less their citizenship.

Because the court has not yet determined whether it has jurisdiction over this matter, it is inappropriate to address the other arguments raised in Wisconsin Surgery's motion to dismiss. Those aspects of Wisconsin Surgery's motion are denied without prejudice.

Wisconsin Surgery Center has also moved to stay discovery. (ECF No. 28.) It argues that, because this action may be dismissed, staying discovery may serve to avoid

13
Case 2:20-cv-00706-WED   Filed 09/22/20   Page 13 of 15   Document 32

needless expense and effort. Lal and Stauss join in the motion. (ECF No. 30.) The defendants also argue that the discovery requests are overly broad and unduly burdensome. (ECF Nos. 28, 30.)

FTUTB opposes the motion. (ECF No. 31.) It argues that the case is going to go ahead one way or another, either in federal or state court and with either FTUTB or the individual secured lenders as plaintiffs. (ECF No. 31 at 4 (citing *Metro Fibernet v. Clear Home*, No. 1:19-cv-03070-JPH-DML, 2020 U.S. Dist. LEXIS 109237, at *7 (S.D. Ind. Apr. 21, 2020)).) Thus, in its view, a stay merely delays the inevitable.

The court agrees with FTUTB that when the question is not *if* but *where* a case will go ahead, staying discovery is generally inefficient. But Wisconsin Surgery's motion to dismiss also challenges the scope of the plaintiff's case, which would stand to implicate the scope of discovery. Moreover, in Wisconsin Surgery's motion to stay discovery it also argues that the discovery requests are overbroad. In light of the unresolved questions as to the court's jurisdiction, the court cannot address these issues. Consequently, the court will grant the motion to stay discovery.

Finally, because it is unclear whether jurisdiction exists, the court is unable to resolve FTUTB's motion for a protective order. (ECF No. 25.) The court must defer ruling on that motion until jurisdiction is established.

**IT IS THEREFORE ORDERED** that Vishal Lal and Thomas Stauss's "Motion to Dismiss for Lack of Jurisdiction" (ECF No. 9) is denied without prejudice. Construing

the motion as alternatively arguing for dismissal under Rule 12(b)(6) and Rule 17(a), the motion is granted. The complaint is dismissed without prejudice.

**IT IS FURTHER ORDERED** that Wisconsin Surgery Center's motion is granted in part and denied without prejudice in part. It is granted pursuant to Rule 12(b)(6) and Rule 17(a) and the complaint is dismissed without prejudice. As to all other ground in its motion, the motion is denied without prejudice.

**IT IS FURTHER ORDERED** that Wisconsin Surgery Center's motion to stay discovery (ECF No. 28) is **granted**. This order does not preclude the parties from voluntarily engaging in discovery.

**IT IS FURTHER ORDERED** that FTUTB shall file an amended complaint no later than **October 13, 2020**. If an amended complaint is not filed by October 13, 2020, the court will dismiss this action without prejudice pursuant to Rule 12(b)(6) and Rule 17(a).

Dated at Milwaukee, Wisconsin this 22nd day of September, 2020.

_William E. Duffin_
WILLIAM E. DUFFIN
U.S. Magistrate Judge